481 So.2d 1376 (1986)
STATE of Louisiana
v.
Stephen B. CUSHMAN.
No. 85-KA-484.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
*1377 John M. Mamoulides, Dist. Atty., Twenty-Fourth Judicial Dist., James Maxwell, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of Counsel), Gretna, for appellee.
John H. Craft, Staff Appellate Counsel, Twenty-Fourth Judicial Dist., Indigent Defender Bd., Gretna, for appellant.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
CHEHARDY, Judge.
Stephen B. Cushman appeals his conviction of attempted second degree murder, LSA-R.S. 14:27 and 14:30.1, and the sentence of twenty years' imprisonment at hard labor imposed thereon.
The incident occurred on September 10, 1983 at Brothers Auto Parts store on Jefferson Highway in Jefferson, Louisiana. It was approximately 6:00 p.m. and the store had closed for the day. Everett J. Waguespack Jr., owner of the business, was working at his desk in the office when he heard someone come into the room. He looked around and saw that it was Stephen Cushman, one of his employees. Cushman had been working for him for about a month. Waguespack testified he turned back to his desk to continue what he had been doing, when suddenly he was hit on the back of his head. He could not remember anything after that first blow.
Meanwhile, his wife, Shelly Waguespack, had become worried when Mr. Waguespack did not arrive home at 5:30 as expected. After telephoning the store twice without response, she contacted her father-in-law, whom they were to meet for dinner. Mr. Waguespack Sr. also became worried; accordingly, Shelly Waguespack and her father-in-law drove together to the store. After entering and looking around, they found Everett Waguespack Jr. lying face down in a pool of blood between two desks. A photocopying machine had been overturned on his back. Mr. Waguespack Sr. with difficulty lifted the machine off his son and turned him over. His son's face was bloody and so swollen as to be almost unrecognizable. His right eye had been knocked from its socket. He was still alive, however.
When Deputy Salvador Castagnetta arrived on the scene at approximately 7:36 p.m., the fire department and emergency medical personnel from East Jefferson General Hospital were already there assisting the victim. Deputy Castagnetta observed the victim who was lying face up, had massive injuries to the upper right portion of his head; his eye was actually hanging out of the socket and brain matter was protruding from his head. He investigated the scene and noted there were several "little intercom" boxes on the desk and that one of them had had its wire cut. He also saw there were several bank deposit bags that appeared to have been opened and thrown up against the wall, leading him to believe a robbery might be involved. In addition, he noted that the room was "torn up extremely." Deputy Castagnetta then requested backup units to complete the investigation.
Deputy Ted Lococo arrived at the scene in response to the call for backup units. About ten or fifteen minutes later he received another call from headquarters, advising that a telephone call had been received from Stephen Cushman, who said he had been involved in a fight with his boss on Jefferson Highway and thought he had killed him. Deputy Lococo drove to Cushman's house. Cushman was still on the telephone with police headquarters when he arrived. Lococo relayed a message to Cushman through the police radio operator, ordering Cushman to step outside. Cushman *1378 complied, and obeyed the officer's directions to walk out into the street, lie down and stretch his arms out to his sides. Cushman was then searched, handcuffed, advised of his rights and placed in the police car.
Deputy Lococo then conducted a search of the defendant's apartment, with the defendant's written consent. He found various articles of bloodstained and torn clothing and $253 in cash. The money later was determined to have been taken from Waguespack's office. The defendant was then transported to Central Lockup and booked with attempted first degree murder.
Meanwhile, the victim had been taken to the Ochsner Hospital emergency room, where Dr. Richard Coulon examined him and then performed immediate surgery. Dr. Coulon testified that Waguespack had severe head and facial injuries, his eye was almost removed from its orbit, his brain substance was oozing from his scalp wounds, and portions of his temple and facial bones were entirely missing. Immediate surgery was performed to remove blood clots, the eye, and the damaged portions of the brain. Multiple surgeries have been performed at intervals since then in attempts to reconstruct the front part of Waguespack's head and the upper part of his face. Because of the extensive damage these operations have been only partially successful. Dr. Coulon testified that the wounds were caused by multiple lacerations from a heavy object.
The victim and his wife testified that some $500 had been found missing from the cash box following the incident. (As mentioned above, only $238 was recovered.)
Stephen Cushman testified in his own behalf. He admitted that he struck Waguespack with an iron bar, but claimed he did so under provocation from the victim. Cushman stated he had gone into Waguespack's office to inquire about a car allowance he said Waguespack had promised to pay him. According to Cushman, Waguespack became annoyed and threw a book at him. Cushman said he could not remember much after striking the first blow, although he did recall that they scuffled all over the room and that the copy machine fell on Waguespack.
Cushman testified he became frightened after he saw his boss lying on the floor in all the blood, with money scattered around. Although he denied having any intent to kill or rob his employer, he admitted he grabbed about $500 before he fled the scene. As he ran away he realized he was carrying the pipe with which he had beaten Waguespack, so he hid it "in a hole ... near a tree." This pipe, which actually was the handle to a hydraulic bearing press in the victim's shop, was later discovered by another one of Waguespack's employees in a hole in the wall of a motel across the street from the store.
Cushman was charged with attempted first degree murder of Everett J. Waguespack Jr., violation of LSA-R.S. 14:27 and 14:30. He waived a jury and was tried by a judge, who found him guilty of attempted second degree murder. In pronouncing the verdict, the court stated, "The court ... finds that although the defendant, Stephen Cushman, did not as required in the first degree murder statute have specific intent to kill the victim in this case, his actions were volitive [sic] of the second degree murder statute. The court finds him guilty of attempt [sic] second degree murder."
The defendant was sentenced after a presentence investigation had been conducted. At the sentencing hearing, the judge stated,
"I have reviewed the presentence conducted in this matter and the reports of individuals for the victim and for the defendant, which I order attached to the record. Mr. Cushman, you have ruined the lives of many people. You have ruined the victim's life. You have ruined his family's life. You helped ruin your family's life and ultimately you ruined your life. The injuries you inflicted on this victim are beyond comprehension. I believe that lurking in the background is a drug situation. I don't believe there would be any benefit for probation for you and any lesser sentence * * * would *1379 deprecate the seriousness of your offense. You are sentenced to a period of twenty years at hard labor within the state correctional system. * * *"
On appeal, Cushman raises the following assignments of error:
(1) That the evidence presented by the State at trial was not sufficient to justify the verdict of attempted second degree murder;
(2) That the court erred in finding the defendant guilty of attempted second degree murder after finding as a factual matter that the defendant did not have the specific intent to kill;
(3) That the record contains an error patent on its face in that the commitment indicates that the sentence of twenty years be served without benefit of probation, parole or suspension of sentence, a condition not authorized by law and not reflected by the transcript of the sentence as imposed in open court;
(4) That the court erred in sentencing defendant to an excessive sentence;
(5) That the court failed to comply with Article 894.1 of the Code of Criminal Procedure in sentencing defendant; and
(6) Any and all errors patent on the face of the record.
Assignments of Error Nos. 1 and 2 both contest the sufficiency of the evidence to convict defendant of second degree murder. R.S. 14:30.1 provides,
"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
R.S. 14:27 states,
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;
* * * * * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."
The defendant's arguments turn primarily on the trial judge's statement that defendant did not have specific intent to kill the victim. Cushman asserts that although the second degree murder statute requires specific intent either to kill or to inflict *1380 great bodily harm, the statute has been jurisprudentially limited to require that for attempted second degree murder the perpetrator must have specific intent to kill the victim; specific intent to inflict great bodily harm is not enough.
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward accomplishment of that goal. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975).
"A specific intent to inflict great bodily harm is sufficient to find a defendant guilty of murder if the victim dies, but is not sufficient to find him guilty of the attempt if the victim survives. In such a case, the defendant's intent to inflict great bodily harm would be sufficient only to find him guilty of a batter. * *" State v. Latiolais, 453 So.2d 1266, 1268 (La.App. 3 Cir.1984).
Specific intent is that state of mind existing when circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Because specific intent is a state of mind, it need not be proven directly as a fact, but instead may be inferred from the circumstances of the transaction and the actions of the defendant. LSA-R.S. 15:445. No premeditation is required to prove specific intent. State v. Latiolais, supra.
The determination of the requisite intent in a criminal case is the province of the trier of fact. State v. Huizar, supra. Where the defendant presents evidence that he was in danger of great bodily harm himself, or evidence that his acts were done in passion as a result of victim provocation, it is for the trier of fact to determine whether it was reasonably necessary for the defendant to attempt to kill in order to save himself (negating culpability) or that he did so with provocation in the heat of passion (mitigating the degree of culpability to manslaughter). See State v. Hart, 467 So.2d 1366 (La.App. 5 Cir.1985); State v. Dill, 461 So.2d 1130 (La.App. 5 Cir.1984), writs denied 475 So.2d 1106.
In reviewing a conviction for sufficiency of evidence under the standard set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the defendant guilty beyond a reasonable doubt. Where the evidence is circumstantial, the rule is that, assuming every fact to be proved that the evidence tends to prove, in order to convict the evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
We are aware that in reviewing a ruling of the trial court based upon a finding of fact, the appellate court must place great weight upon the determination of the court below because the trial judge had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. State v. Vessell, 450 So.2d 938 (La. 1984). We are aware these findings may not be disturbed unless they are not supported by the evidence. State v. Loyd, 425 So.2d 710 (La.1980).
In finding Cushman guilty of attempted second degree murder the trial judge obviously resolved any conflicts in the testimony regarding Cushman's claims of self defense and victim provocation against Cushman. However, the trial judge did not infer from the circumstances proof of Cushman's specific intent to kill the victim. Although a finding regarding specific intent is a factual finding (of which there is no appellate review in criminal matters), the sufficiency of the evidence to support such a finding is clearly a matter of law and thus is reviewable under the standards for testing overall evidence for reasonable doubt. See Jackson v. Virginia, supra; State v. Nealy, 450 So.2d 634 (La.1984); State v. Hart, supra.
In this case the evidence of the horrible injuries inflicted upon Mr. Waguespack as a result of his beating by Cushman *1381 firmly support a finding that Cushman had the requisite intent to kill. The circumstances of the incident, including the physical wreckage of the room in which the attack took place and the sheer brutality of the attack, imply that the defendant must have adverted to and actively desired the prescribed criminal consequences. The trial judge's finding that Cushman did not have specific intent to kill the victim is clearly contrary to the law and the evidence. We conclude that the evidence, as a matter of law, is clearly sufficient to affirm the defendant's conviction. See State v. Vessell, supra; State v. Loyd, supra; State v. Gultry, 471 So.2d 804 (La.App. 5 Cir. 1985).
In Assignment of Error No. 3 defendant asserts the record contains patent error because the commitment indicates his twenty-year sentence is to be served without benefit of probation, parole or suspension of sentence, a condition not authorized by law and not reflected by the transcript of the sentence imposed in open court.
We note that the minute entry, as well as the commitment, states that defendant's sentence is to be served without benefit of probation, parole or suspension of sentence. This was not the sentence pronounced in open court and, as defendant correctly asserts, it is not a sentence authorized by R.S. 14:27, which provides the penalty for an attempt to commit a crime. We note also that the commitment, signed by the trial judge, includes the erroneous statement that Cushman pleaded guilty to the charge of attempted second degree murder, whereas the record shows he was convicted after a bench trial.
Accordingly, we remand the case for correction of the commitment and minute entry to delete the provision that defendant's sentence be served without benefit of probation, parole or suspension of sentence, and also for correction of the statement that Cushman pleaded guilty rather than was convicted. See State v. Eisenhardt, 185 La. 308, 169 So. 417 (1936); State v. White, 156 La. 770, 101 So. 136 (La.1924).
In Assignments of Error Nos. 4 and 5, defendant argues that his sentence was excessive and that the trial judge failed to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. He also complains on appeal, for the first time, of the trial judge's use of a presentence investigation report in his sentencing. He argues the judge failed to identify what elements of the report he relied upon when imposing sentence.
We find no merit to any of these claims. The maximum sentence defendant could have received under R.S. 14:27 was fifty years. The twenty-year sentence imposed was less than half the maximum allowed for this crime. As noted by the judge in his reasons for sentence, and as explained by the victim's doctor at trial, the injuries Cushman inflicted on Mr. Waguespack permanently destroyed portions of Mr. Waguespack's head, face and brain. The victim's life as it previously existed has been destroyed. The injuries were so severe that only partial reconstruction of the head and face have been achieved. Under these circumstances the record as a whole provides a more-than-sufficient factual basis for the court's determination that imprisonment, rather than suspension of sentence and probation, was the appropriate punishment. See State v. Williams, 397 So.2d 1287 (La.1981); State v. Guiden, 399 So.2d 194 (La.1981).
While the defendant was apparently a first offender, the offense was of a very serious nature. Cushman is extremely fortunate his victim survived, for otherwise he would be facing either death or life imprisonment without benefit of parole, probation or suspension of sentence. The penalty imposed neither shocks this court's sense of justice nor was it an abuse of the trial court's broad discretion in sentencing. See State v. Lodrige, 414 So.2d 759 (La.1982); State v. Williams, supra.
Finally, regarding defendant's complaint that the trial judge did not point out what elements of the presentence investigation report he relied upon, the record shows that the judge ordered the report *1382 attached to the record prior to imposing sentence. The defendant has a right of access to the presentence investigation report and to rebut any adverse information. See State v. Segers, 357 So.2d 1 (La.1978). However, defense counsel must request review of the report and, in the event of denial, must show that the report relied upon by the trial judge contained false information prejudicial to the defendant. State v. Boone, 364 So.2d 978 (La.1978).
These rights are not abridged merely because the defendant fails to exercise them when given the opportunity, but such complaints will not be reviewed for the first time on appeal where the defendant neither requests access to the report nor contests it for misinformation before or at the time of sentencing. State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Cox, 369 So.2d 118 (La. 1979). Because defendant failed to take either of these steps, we find no abuse of the trial judge's discretion in not disclosing the considerations documented in the presentence investigation report. Further, the defendant has not identified what particular prejudice he feels resulted from the trial judge's failure to articulate the considerations documented in the presentence investigation report.
For the foregoing reasons, the conviction of defendant and the sentence of twenty years' imprisonment at hard labor are affirmed. The case is remanded and the district court is ordered to correct the minute entry of the sentencing and the sentencing commitment to delete the statement that the sentence is to be served "without benefit of probation, parole or suspension of sentence."
AFFIRMED AND REMANDED, WITH ORDER.