Revised September 8, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-31220

---

ARCHIE HARRIS,

Plaintiff-Appellant,

versus

WARDEN, LOUISIANA STATE PENITENTIARY,

Defendant-Appellee.

---

Appeal from the United States District Court for the
Western District of Louisiana

---

August 24, 1998

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Archie Harris (Harris) appeals the district court's denial of *habeas corpus* relief as to his Louisiana attempted second degree murder conviction. Harris raises two issues: (1) an erroneous jury instruction deprived him of due process and (2) trial counsel's failure to object to the erroneous instruction and failure to correctly present the issue to the jury constituted ineffective assistance of counsel. We affirm the district court's denial of relief.

**Facts and Proceedings Below**

Harris is currently serving a 45-year sentence at hard labor in the Louisiana State Penitentiary at Angola for the attempted second degree murder of Jackie Jackson (Jackson).

On October 3, 1984, Jackson accepted a ride from Harris, with whom she was acquainted. Together with Joseph Hunter, Jr. (Hunter), who was also a passenger in Harris's car, they went to a baseball park in Logansport, Louisiana, where they drank alcohol and smoked marihuana. Later, Jackson and Harris drove away alone, leaving Hunter at the ball park.

Jackson testified at trial that after they left the ball park, Harris demanded that she give him a ring that she was wearing. Upon her refusal, he hit her several times and demanded that she have sex with him, which she also refused. He then hit her some more, but eventually agreed to take her to her home in Longstreet, Louisiana. When they arrived at her home, Jackson attempted to leave the car, but Harris grabbed her and began stabbing her with a knife in the chest, face, neck, and abdomen. Jackson broke free and ran, but Harris grabbed her and placed her in the back seat of his car.

Harris drove off, but eventually ran out of gas. At that point, he ordered Jackson into the trunk of the car. Jackson initially refused, to which Harris responded, "well, I am going to have to finish you off right here." Fearing for her life, she got

into the trunk and Harris walked off in search of gas.

Harris went to the home of David Mason (Mason) asking for gas. Mason agreed to help and returned to Harris's car with him. While attempting to start the car, Mason leaned into the car and heard a woman asking for help. He asked whether there was anyone in the car, and heard a woman's voice respond "Yes," and "He is trying to kill me." Mason posed the same question to Harris; Harris responded that he had a calf that he was planning on butchering in the car. Mason was unconvinced and called the police when he returned home.

Deputy Arbuckle (Arbuckle) of the DeSoto Parish Sheriff's Office recognized Harris from Mason's description of the car. Arbuckle stopped Harris and explained that there was a report that Harris might have someone in the trunk. Harris denied there was anyone in his trunk and added that he did not have a key to the trunk, but he offered to drive with Deputy Arbuckle to his sister's house, where he could secure a key. Deputy Arbuckle agreed. Not far down the road, Arbuckle observed Harris throw an object from his car; it was later discovered that that object was a knife. At this point, Arbuckle placed Harris in custody.

At around this time, Mason and his brother arrived at the scene and assisted with the arrest of Harris and rescue of Jackson. After Jackson was rescued she was transported to the hospital with several life-threatening wounds. The emergency room physician testified that her blood pressure was 40/0; she had no breathing

3

sounds; she had sucking chest wounds; she had several life threatening stab wounds to her neck, chest, and abdomen. After Jackson's condition was stabilized, three physicians operated on her neck, heart, and abdomen. Jackson survived the stabs and the surgery, and she testified against Harris at trial. Harris did not testify.

Harris was tried for the attempted first degree murder of Jackie Jackson on the theory that he had the "specific intent to kill or to inflict great bodily harm and [was] engaged in the perpetration or attempted perpetration of aggravated kidnaping . . . ." La. Rev. Stat. § 14:30A(1)(defining first degree murder).[1] In addition to attempted first degree murder, the jury was also instructed on attempted second degree murder, attempted manslaughter, and aggravated battery.

The jury found Harris guilty of attempted first degree murder, and the trial court imposed a sentence of 45 years at hard labor. On direct appeal, however, the Louisiana Court of Appeals, Second Circuit, reversed that conviction on the grounds that Harris was not engaged in an aggravated kidnaping since he never made a ransom demand, which is an essential element of aggravated kidnaping in Louisiana. *See State v. Harris*, 480 So.2d 943 (La. App. 2d. Cir. 1985). The Louisiana Court of Appeals found that attempted second

---

[1]    In 1990 the definition of first degree murder was enlarged by adding "second degree kidnaping" as one of the predicate offenses listed in section 14:30A(1).  Acts 1990, No. 526, § 1.

4

degree murder was a lesser included offense of attempted first degree murder. The court also found that the jury's verdict of guilty of attempted first degree murder carried with it an implicit finding that the defendant acted with the specific intent to kill. *Id.* at 944. Because Harris possessed the requisite intent and engaged in an act in furtherance of that intent, the court adjudged Harris guilty of second degree murder and remanded the case for resentencing.

On remand, the district court resentenced Harris to 45 years at hard labor. Later, Harris filed an application for post-conviction relief (PCR) in the state district court. The district court denied the application, and the Louisiana Court of Appeals, Second Circuit, affirmed this denial. *See State v. Harris*, 643 So.2d 779 (La. App. 2d. Cir. 1994). The Louisiana Supreme Court denied review of Harris's case. *See State v. Harris*, 650 So.2d 251 (La. 1995).

After exhausting his state remedies, Harris turned to the federal courts for relief. On August 29, 1995, Harris filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, in the United States District Court for the Western District of Louisiana. On June 21, 1996, the magistrate judge filed a Report and Recommendation suggesting that the writ be denied. Despite, Harris's objections to the Report and Recommendation, the district court adopted the magistrate's report and dismissed the petition

5

with prejudice.

On appeal, Harris has raised two issues: (1) the erroneous jury instruction deprived him of due process and (2) trial counsel's failure to object to the erroneous instruction and failure to correctly present the issue to the jury constituted ineffective assistance of counsel.

**Discussion**

The basis of this appeal is an erroneous jury instruction[2]

---

[2] The jury instructions defined "attempt" as follows:

"Any person having a specific intent to commit a crime, who does or omits an act for the purpose of and tending toward accomplishing his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt."

The jury instructions defined first and second degree murder as follows:

"Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm; or when the offender is engaged in the perpetration or attempted perpetration of aggravated kidnaping, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

Thus, in order to convict the defendant of attempted second degree murder, you must find:

> 1. That the defendant had a specific intent to commit the crime of second degree murder; and

6

that purportedly allowed the jury to convict Harris on a lesser state of mind than is required under Louisiana law. In order to be guilty of attempted murder, a defendant must have the specific intent to kill; the mere intent to inflict great bodily harm, while sufficient to support either a first or second degree murder conviction,[3] is insufficient to convict a defendant of *attempted* murder (first or second degree). Both Harris and the State agree that the instruction was erroneous; they disagree, however, as to the effect of this error. Assuming, *arguendo*, that the given

> 2. That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of second degree murder.
>
> First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnaping, armed robbery, or simple robbery.
> Thus, in order to convict the defendant of attempted first degree murder, you must find:
>
> 1. That the defendant had a specific intent to commit the crime of first degree murder; and
> 2. That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of first degree murder."

[3] First degree murder under section 14:30A(1) requires *both* a "specific intent to kill or inflict great bodily harm" *and* that the offender be engaged in one or more of certain listed felonies (here allegedly only aggravated kidnaping); second degree murder, under La. Rev. Stat. § 14:30.1A(1) & (2), requires *either* "a specific intent to kill or to inflict great bodily harm" *or* that the offender be engaged in one or more of certain listed felonies (here allegedly only aggravated kidnaping).

7

instruction is constitutionally deficient for failing to specifically instruct that Harris needed to have the "specific intent to kill," we must determine whether this error, either of itself or in connection with Harris' claim counsel was ineffective in regard thereto, was such as to require setting aside Harris's conviction on federal habeas.

I.    Standard of Review

A.    Structural Error

At one time lower courts generally held that federal constitutional errors could never be harmless, and required reversal no matter how trivial the defect. *See* 5 Am. Jur. 2d. *Appellate Review* § 723. Then, in 1967, the Supreme Court held that some constitutional errors could be so insignificant that they could be deemed *harmless*. *See id.* (citing *Chapman v. California*, 87 S.Ct. 824 (1967)). Today, most constitutional errors are susceptible to harmless error analysis, and harmless error is the norm rather than the exception. *See id.* In fact, there is a strong presumption that constitutional errors are subject to harmless error analysis. *See Rose v. Clark*, 106 S.Ct 3101, 3106 (1986).

Despite this widespread application of harmless error analysis, there are still some constitutional violations that require reversal regardless of their harm. These errors have been labeled "structural" because they involve structural defects in the

8

criminal trial mechanism that infect the entire trial process.[4]

Structural errors stand in contrast to "trial errors"—errors that occur during the *presentation* of the case to the jury that are susceptible to harmless error analysis because the error may be quantitatively assessed in the context of the other evidence presented at trial.[5]

---

[4]    In *United States v. Wiles*, 102 F.3d 1043, 1056-57 (10th Cir. 1996), *vacated sub nom. United States v. Schleibaum*,118 S.Ct. 361(1997), the Tenth Circuit gave a comprehensive list of cases in which courts have found structural error:

> "Examples of structural errors are exclusion of individuals from a grand jury based on race, *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of the right to self-representation, *McKaskle v. Wiggins*, 465 U.S. 168, 177-78 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984); denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 49 n. 9, 104 S.Ct. 2210, 2217 n. 9, 81 L.Ed.2d 31 (1984); a petit jury's improper selection, and exposure to pretrial publicity, *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); denial of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); . . . potentially biased judges, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)[; and a constitutionally-deficient reasonable doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).]" *Id.*

[5]    In *Arizona v. Fulminante*, 111 S.Ct. 1246, 1263 (1991), the Court gave a list of cases in which obvious constitutional errors were held not to be structural, but rather to be subject to harmless error analysis:

> "Since this Court's landmark decision in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which we adopted the general rule that a constitutional error does not automatically require reversal of a conviction, the Court has applied harmless-error analysis to a wide range

of errors and has recognized that most constitutional errors can be harmless.  See, e.g., *Clemons v. Mississippi*, 494 U.S. 738, 752-754, 110 S.Ct. 1441, 1450-1451, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case);  *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); *Carella v. California*, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneous conclusive presumption);  *Pope v. Illinois*, 481 U.S. 497, 501-504, 107 S.Ct. 1918, 1921-1923, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense);  *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing an erroneous rebuttable presumption); *Crane v. Kentucky*, 476 U.S. 683, 691, 106 S.Ct. 2142, 2147, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession);  *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause);  *Rushen v. Spain*, 464 U.S. 114, 117-118, and n. 2, 104 S.Ct. 453, 454-455, and n. 2, 78 L.Ed.2d 267 (1983) (denial of a defendant's right to be present at trial);  *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (improper comment on defendant's silence at trial, in violation of the Fifth Amendment Self-Incrimination Clause);  *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause);  *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (failure to instruct the jury on the presumption of innocence); *Moore v. Illinois*, 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of the Sixth Amendment Counsel Clause);  *Brown v. United States*, 411 U.S. 223, 231-232, 93 S.Ct. 1565, 1570-1571, 36 L.Ed.2d 208 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause);  *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (confession obtained in violation of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964));  *Chambers v. Maroney*, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-1982, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of the Fourth Amendment);

10

Although courts have attempted to define "structural error," the exact meaning is vague. Courts have stated that structural errors affect the *framework* of the trial, rather than just the trial *process*. As such, the error renders the trial an unreliable mechanism for the determination of guilt beyond a reasonable doubt, and the consequences of the error are necessarily unquantifiable and indeterminable. *See United States v. Wiles*, 102 F.3d 1043, 1056 (10th Cir. 1996).

For instance, a court cannot determine whether Gideon's lack of counsel actually harmed him—he may have put on a better defense and brought forth more evidence than a public defender might have—and thus the case must be reversed. On the opposite extreme, a trial error, such as a minor violation of the confrontation clause, is quantifiable and can be weighed against the other evidence that was presented in order to determine whether the error was harmless.

The cases in between are not as obvious. Particularly puzzling are the jury instruction cases. Most of the jury-instruction cases have been analyzed under a harmless error standard, but in *Sullivan v. Louisiana*, 113 S.Ct. 2078 (1993), the

---

*Coleman v. Alabama*, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 2003-2004, 26 L.Ed.2d 387 (1970) (denial of counsel at a preliminary hearing in violation of the Sixth Amendment Confrontation Clause)."

11

Supreme Court held that a constitutionally deficient "reasonable doubt" instruction was structural. The Court stated that "where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings," no jury verdict of beyond a reasonable doubt exists upon which to base a harmless error analysis. *Id*. at 2082.

In *Kentucky v. Whorton*, 99 S.Ct. 2088 (1979) the Court held that failure to instruct the jury on the "presumption of innocence" was a trial error, but in *Jackson v. Virginia*, 99 S.Ct. 2781 (1979), the Court held that failure to instruct on "reasonable doubt" was a structural error. The difference is that it is possible to assess the effect on the jury of the omission of the "presumption of innocence" instruction, while it is impossible to determine the effect of the omission of the "reasonable doubt" instruction. *See Arizona v. Fulminante*, 111 S.Ct. 1246, 1255 (1991) (White, J., dissenting).

As the dissent in *Fulminante* stated, "these cases can be reconciled only by considering the nature of the right at issue and the effect of an error upon the trial." *Id*. The majority essentially agreed with this characterization and held that the error should be evaluated based on its "effect upon the composition of the record." *Id.* at 1265 (the *Fulminante* Court ultimately held that the admission of a coerced confession was not a structural error; it was a trial error, but it was not harmless).

12

Harris's case is analogous to the jury instruction cases that found the erroneous instructions to be trial errors and susceptible to harmless error analysis. In *Pope v. Illinois*, 107 S.Ct. 1918 (1987), the Court held that a jury instruction that misdefined an element of the offense was harmless.[6] More recently, in *California v. Roy*, 117 S.Ct. 337 (1996), the Court held that a jury instruction that did not include a statement informing the jury that they must find intent could be reviewed for harmless error.

Based on *Pope* and *Roy*, we hold that the Louisiana court's erroneous instruction does not amount to a structural error and in this habeas case is subject to harmless error review.[7]

B.  Harmless Error

---

[6]     *Pope* resolved the issue of whether failing to clearly instruct a jury is structural and automatically reversible. *See United States v. Kerley*, 838 F.2d 932, 938-39 (7th Cir. 1988) (holding that any intimations that "merely fail[ing] to instruct clearly on an element of the crime. . . . is always reversible. . . . were stilled by *Pope v. Illinois* . . . ."). By holding that the constitution does not require that such errors be deemed automatically reversible, *Pope* put to rest an issue that had been simmering since the Supreme Court's decisions in *Sandstrom v. Montana*, 99 S.Ct. 2450 (1979). The *Sandstrom* court had held that it is unconstitutional to instruct a jury that a defendant "intends the ordinary consequences of his ordinary act," but left open the question whether such an error could be subject to harmless error analysis. *Id.* at 2453

[7]     Because we are here faced with an attack on a *state* conviction, we may grant relief only when that is required by the constitution. We observe that that limitation is generally not applicable when we review a *federal* conviction on direct appeal, and accordingly in such cases we may treat certain properly preserved errors as mandating reversal without assessment of prejudice notwithstanding that such treatment of the same claim would not be proper in a habeas challenge to a state conviction.

13

As this is a 28 U.S.C. § 2254 habeas case, it is properly analyzed under the harmless error standard set forth in *Brecht v. Abrahamson*, 113 S.Ct. 1710 (1993), and adopted by this Court in *Woods v. Johnson*, 75 F.3d 1017 (5th Cir. 1996).[8] An error requires habeas relief only if it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 66 S.Ct. 1239 (1946)).

Prior to *Brecht*, lower courts had generally applied the more onerous *Chapman* standard in habeas cases as well as in direct appeals. Under *Chapman*, relief was required unless the error was harmless "beyond a reasonable doubt." *See Chapman v. California*, 87 S.Ct. 824 (1967). In *Brecht,* the Supreme Court consciously lowered the harmless error standard for section 2254 *habeas* cases. *See Brecht*, 113 S.Ct. at 1721-22 ("The imbalance of the costs and benefits of applying the *Chapman* harmless-error standard on collateral review counsels in favor of applying a less onerous standard on habeas review of constitutional error."). In adopting the *Kotteakos* "substantial and injurious effect" standard, the Court noted that there must still be actual prejudice and that a

---

[8] Since this case was filed before the April 1996 effective date of the AEDPA, we will review it under pre-AEDPA standards. *See Lindh v. Murphy*, 117 S.Ct. 2059 (1997) (holding that the AEDPA does not apply to cases that were filed before the April 1996 effective date of the AEDPA).

14

mere "reasonable possibility" that the trial error affected the verdict would *not* suffice to warrant habeas relief. *See Brecht*, 113 S.Ct. at 1721 ("granting habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the verdict, *see Chapman v. California* [citation omitted], is at odds with the historic meaning of habeas corpus—to afford relief to those whom society has 'grievously wronged.'").

Thus, as we have previously stated in *Woods v. Johnson*, the error must be "substantial," and there must be something *more* than a "mere reasonable possibility" that the error contributed to the verdict, but the *Brecht* standard does not require a "reasonable probability" that absent the error the verdict would have been different; and "if our minds are 'in virtual equipoise as to the harmlessness'" under the stated standard, then relief must be granted. *See Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996).

II. Due Process

A. Error

This Court and Louisiana courts have held that an instruction, such as the one given in this case, that allows a jury to convict a defendant of the Louisiana offense of attempted murder if he merely intended to inflict bodily harm but did not specifically intend to kill the victim is constitutionally deficient. In *Gray v. Lynn*, 6 F.3d 265, 269 (5th Cir. 1993); *Scott v. Louisiana*, 934

15

F.2d 631, 634 (5th Cir. 1991); *State v. Butler*, 322 So.2d 189, 192 (La. 1975), and *State v. Serigny*, 610 So.2d 857, 859 (La. App. 1st Cir. 1992), for example, it was held that a jury instruction is erroneous where it *expressly* instructs that the jury can convict a defendant of attempted murder if he merely had the intent to inflict great bodily harm. Such instructions are unconstitutional because they allow the jury to convict a defendant on lesser grounds than are statutorily required. *See State v. Butler*, 322 So.2d 189, 193-94 (La. 1975).

In Harris's case, however, the instruction was less egregious. The court provided the jury with the statutory definition of murder, which states that the defendant must either intend to kill or inflict great bodily harm, and then stated that in order to convict the defendant of attempted murder they must find that the defendant had the "specific intent to commit [murder]". Thus, the court's instruction for attempted murder merely inferentially incorporated by reference the intent required for murder, but the court did not *expressly* state that the intent to inflict great bodily harm was sufficient to convict the defendant of attempted murder.

Several Louisiana courts have held that these type of instructions are erroneous. *See State v. Porter*, 626 So.2d 476, 478 (La. App. 3d Cir. 1993); *State v. Hall*, 606 So.2d 972, 980 (La. App. 3d Cir. 1992); *State v. Guin*, 444 So.2d 625, 635 (La. App. 3d

16

Cir. 1983) (all holding that jury charges that first define murder as requiring specific intent to kill or inflict great bodily harm, and then define attempted murder with reference to the definition of murder, are improper). In light of these cases and the fact that the state does not dispute that the instruction was substantively erroneous, we conclude that the references in the instruction to the intent to inflict great bodily harm were improper and rendered the instruction legally erroneous and constitutionally deficient.

B.  Harmless Error

As noted above, this erroneous jury instruction is not a structural error and as such is subject to harmless error analysis; additionally, since this is a *habeas* case, we analyze the error for harm under the more lenient *Brecht* standard and will find relief warranted if, but *only* if, the error had a *substantial* effect or influence in determining the verdict so that there is *more* than a "reasonable possibility" that the result would have been different had the jury been properly instructed.  Because we conclude, as did the magistrate judge and the district court, that the error here did *not* have a *substantial* effect or influence in determining the verdict and that there is *not* more than a reasonable possibility that a jury would have reached a different result but for the erroneous instruction, we affirm the denial of *habeas* relief.

Although this Court and the courts of Louisiana have routinely held that the inclusion of the phrase "intent to inflict great

17

bodily harm" in a jury instruction for attempted murder under Louisiana law is erroneous, courts have also held that such error does not necessarily require reversal. *See, e.g., State v. Serigny*, 610 So.2d 857(La. App. 1st Cir. 1992); *State v. Hall*, 606 So.2d 972, 980 (La. App. 3d Cir. 1992); *State v. Latiolais*, 453 So.2d 1266 (La. App. 3rd Cir. 1984) (all *affirming* the attempted murder convictions despite the erroneous instruction); *but see, e.g., Gray v. Lynn*, 6 F.3d 265 (5th Cir. 1993); *State v. Porter*, 626 So.2d 476 (La. App. 3d Cir. 1993); *State v. Ball*, 554 So.2d 114 (La. App. 2d Cir. 1989) (all *reversing* the attempted murder convictions because of the erroneous instruction).

In *State v. Serigny*, 610 So.2d 857, 860 (La. App. 1st Cir. 1992), the court upheld a conviction despite an erroneous jury instruction similar to the one given in this case. Serigny admitted that he wanted to kill the victim and expressed surprise over the victim's survival. The court concluded that based on this evidence, "no reasonable jury could have reasonably concluded that defendant merely intended to inflict great bodily harm on the defendant." *Id.*

In *State v. Latiolais*, 453 So.2d 1266, 1269 (La. App. 3rd Cir. 1984), the court found compelling evidence of a specific intent to kill where a defendant repeatedly stabbed the victim in the temple, face, and neck, and then left him for dead on the side of the road. The court concluded that the victim's belief that he was left for

18

dead was the only reasonable construction of the events. The *Latiolais* court found that the erroneous jury instruction, which allowed the jury to convict the defendant of attempted murder if he possessed either a specific intent or an intent to inflict great bodily harm, was harmless in light of the compelling evidence of specific intent to kill.

In *Gray v. Lynn*, 6 F.3d 265 (5th Cir. 1993) on the other hand, this Court reached the opposite conclusion and reversed a criminal conviction because the instruction allowed the jury to convict the defendant of attempted murder if he merely intended to inflict great bodily harm. Gray confronted the victim, who was sleeping with a woman who had previously lived with Gray, and threatened to "blow [the victim's] brains out," but rather than carry out his threat, Gray hit the victim several times with the gun, and ultimately fired at him when he ran away, but did not hit him. The Court, reviewing the case for ineffective assistance of counsel, concluded that there was a "reasonable probability" that the jury could have had a reasonable doubt concerning Gray's intent to kill. The Court emphasized that Gray did not take advantage of several "golden opportunities" to kill the victim, which raised doubts about his actual intentions.

*State v. Butler*, 322 So.2d 189 (La. 1975) presented similar doubts concerning the defendant's intent. Butler "taxed [his former girlfriend] with going with another man," and cut her on the

face, eyes, arms, and back, and stated that "if she did not want him, he was going to see who wanted her." *Id.* at 191. The court reversed the conviction without much discussion of whether the error was in fact harmful. Based on Butler's statement, it was reasonable to conclude that he merely intended to mutilate and not kill his victim. Butler's intent was clearly questionable, and there was more than a reasonable possibility that the *Butler* jury, like the *Gray* jury, could have had a reasonable doubt concerning Butler's intent to kill. Because of this more than reasonable possibility, the instruction was harmful.[9]

We hold, based on the evidence presented at trial and the arguments made by Harris, that the error in the instructions did not have a *substantial* effect or influence in determining the verdict and that there was not more than a reasonable possibility that the jury would otherwise have had a reasonable doubt concerning Harris's intent to kill. Thus, the inclusion of the erroneous "intent to inflict great bodily harm" element in the murder definitions was harmless under *Brecht*.

Harris did not present any evidence and did not argue to the jury that he lacked the specific intent to kill. At trial, Harris's theory was that he was not engaged in an aggravated

---

[9]    Of course, the decisions of the Louisiana courts are not binding on us in this respect, but they do provide a useful insight into the views of jurists experienced in the evaluation of the prejudicial effect of such an instruction in Louisiana cases.

20

kidnaping at the time of the attack. But he never contested or in any way called into doubt the obvious fact that he intended to kill Jackie Jackson. The defense did not put on any evidence to counter the obvious and compelling inference that Harris intended to kill Jackson, and the cross-examinations do not suggest that Harris's intent was in dispute.[10]

This case is distinguishable from *Butler*, where the defendant obviously had some intent other than an intent to kill. There is no evidence that Harris merely intended to mutilate, hurt, or do anything less than kill, Jackie Jackson. In this respect, this case is analogous to *Latiolais* where the defendant brutally inflicted life-threatening stab wounds on the victim and left him for dead by the side of the road. Harris, like Latiolais, inflicted life-threatening stab wounds on Jackson and basically left her for dead in the trunk of his car. Not only is Harris's leaving Jackson for dead probative of an intent to kill, but Harris's deliberate use of a deadly weapon in a manner likely to cause death further supports the inference that he intended to kill Jackson. *See Rogers v. State*, 506 N.E.2d 481, 483 (Ind. 1987).

---

[10]   Also, Harris's failure to object to the jury instruction, while not dispositive, is marginally indicative of the fact that he did not consider his intent to be at issue. *Cf. Lowenfield v. Phelps*, 108 S.Ct. 546, 552 (1988) ("We note . . . that defense counsel did not object to either the polls or the supplemental instruction. We do not suggest that petitioner thereby waived this issue, . . . but we think such an omission indicates that the potential for coercion argued now was not apparent to one on the spot.").

Were it not for the fortuitous intervention of external forces, Jackson would almost certainly have died. The emergency room physician testified that Jackson was near death when she was admitted to the hospital, and it was only thanks to the intervention of Mason and Deputy Arbuckle that Jackson was rescued from the trunk and brought to the hospital where she was saved from the brink of death by emergency surgery. The fact that it took an external force to stop the attack on Jackson and rescue her from death makes this case distinguishable from *Gray*, where the defendant had several opportunities to kill his victim, but ultimately failed to take advantage of these "golden opportunities" and did not pursue the victim when he ran off.

Finally, we are persuaded that the sheer brutality of the attack can give rise to no inference other than that Harris affirmatively and actively intended to kill Jackson. *See State v. Cushman*, 481 So.2d 1376, 1380 (La. App. 5th Cir. 1986) (upholding a second degree murder conviction after finding that the horrible injuries inflicted upon the victim along with the savageness of the attack supported a finding that the defendant had the requisite intent to kill).

The evidence that was presented at trial supports only one rational inference concerning Harris's intent—he intended to kill Jackson. Based on the trial evidence, it is inconceivable that Harris merely intended to inflict great bodily harm on Jackson.

22

Nor was his intent in this respect a theory of defense at trial. We conclude that the erroneous instruction was harmless under *Brecht*.

III.  Ineffective Assistance of Counsel

Harris also argues that his conviction ought to be set aside based on ineffective assistance of counsel, because his counsel failed to object to the erroneous jury instruction and this error was prejudicial.  Under the *Strickland* test, a defendant must show that (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  *See Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

Based on the numerous cases that have held jury instructions similar to the one given in this case to be erroneous, we hold that trial counsel's performance was deficient and thus the first prong of the *Strickland* test is satisfied.  However, for the same reasons stated above, we hold that Harris was not prejudiced by his counsel's deficient performance.[11]

---

[11]  Prejudice under *Strickland* requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome" and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like."  *Id*. at 2068.  However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  *Id*.  If an error is harmless under *Brecht*, it would appear not to be prejudicial under *Strickland*.  *See Kyles v. Whitley*, 115 S.Ct. 1555, 1566-67 (1995).

23

## Conclusion

For the foregoing reasons, we affirm the district court's denial of *habeas* relief.

AFFIRMED

ENDRECORD

DeMoss, Circuit Judge, dissenting:

Everyone agrees that the instructions given at Harris' trial were infected with error of constitutional magnitude. Based upon our precedent in *Gray v. Lynn*, 6 F.3d 265 (5th Cir. 1993), and my independent review of this record, I believe there is a reasonable possibility that the jury's verdict was not based upon the required showing that Harris had a specific intent to kill. I likewise believe that the erroneous jury instructions, coupled with the erroneous argument presented by both defense counsel and the prosecuting attorney, create a reasonable probability that, but for trial counsel's unprofessional errors, the outcome might have been different. For those reasons, I must register my dissent.

The jury instructions used at Harris' trial allowed the jury to convict upon a showing of less than all of the essential elements of the offense. Specifically, the instructions permitted Harris' conviction for attempted murder upon a showing of an intent to commit great bodily harm. The panel majority has nonetheless concluded that that error was harmless because (1) Harris did not argue at trial that he did not have a specific intent to kill, and (2) because Harris' trial counsel did not object to the erroneous instructions.

While it is true that Harris did not present any evidence

25

tending to negate the specific intent to kill at trial, it is also true that the state presented absolutely no evidence designed to show that Harris had such an intent. That is simply because intent was not an issue at trial. The entire case was tried upon the erroneous assumption that a specific intent to commit great bodily harm, coupled with Harris' perpetration or attempted perpetration of aggravated kidnaping was sufficient to support his conviction for attempted murder. Similarly, while it is true that Harris' defense counsel did not object to the erroneous instructions, that fact made clear that defense counsel simply did not understand what was required to convict his client; and that is the very deficiency that serves as the foundation for Harris' ineffective assistance of counsel argument.

## I.

There is no dispute that Louisiana law does not permit an attempted murder conviction to be based upon a mere showing of intent to commit great bodily harm. That principal has been well-established since at least 1975. *State v. Butler*, 322 So.2d 189, 192 (La. 1975).

Nonetheless, the jury was first informed by defense counsel, then informed by the prosecuting attorney, and then instructed by the trial court that the statute permitted conviction upon a finding that Harris *either* (1) had a specific intent to kill, *or*

26

(2) had an intent to commit great bodily harm and was engaged in the perpetration of one of the listed felonies, in this case aggravated kidnaping.  Defense counsel told the jury:

> First degree murder is the killing of a human being.  Okay, you have got First Degree Murder, and then you have got another Article says Attempted. What is an attempt? He read both of those to you. They intend to prove in this case that the Defendant had first of all a specific intent to kill, that's going to be up to you, that's the element of the crime, or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnaping.

The prosecuting attorney told the jury:

> [A]nd so at this point the State would tell you that we have presented our case and it is up to you if in fact you find beyond any reasonable doubt that this Defendant attempted to take the life of this person, or at least inflicted enough serious injury upon her that he should have known that her life was threatened and moreover that he forced her into the car under threats and carried her away against her will then in fact it would be your duty to vote to find the Defendant guilty as charged.

Having heard those erroneous arguments, the jury was then read the objectionable charge, which likewise permitted a conviction for attempted murder upon a showing of intent to inflict great bodily harm.

On direct appeal, the Louisiana Court of Appeal rejected Harris' challenge to his sentence, but held *sua sponte* that the evidence was insufficient to establish that Harris was engaged in an aggravated kidnaping.  Given that aggravated kidnaping was an essential element of the first degree murder conviction, the Court

27

of Appeal held that the conviction could not stand.  The Court of Appeal further held, however, that Harris' conviction could be upheld on the lesser responsive verdict of attempted second degree murder because "[i]n order for this jury to have determined that the defendant was guilty of attempted first degree murder, the jury must have concluded that the defendant has the specific intent to kill this victim."  That statement would generally hold true.  But because the deficient performance of Harris' counsel continued on appeal, Harris did not raise the possibility that his verdict was impermissibly based upon an intent to commit great bodily harm. Given the argument of counsel, the evidence presented, and the jury instructions, the Louisiana Court of Appeal's statement that the jury necessarily found a specific intent to kill was in error.

The majority opinion makes no attempt to evaluate the impact of the erroneous arguments presented by defense counsel and the prosecuting attorney.  That omission is notable given this Court's decision in *Gray*, 6 F.3d 265 (5th Cir. 1993).  Gray's jury was likewise instructed that it could convict of attempted murder on a showing of specific intent to kill or to inflict great bodily harm. At Gray's trial, however, the law was correctly argued to the jury by both defense counsel and the prosecutor.  *See id*. at 270 & n.13. The prosecutor's opening statement, which is quoted at length in *Gray*, makes plain that the specific intent to kill is required for conviction of attempted murder.  *Id*.  The *Gray* panel nonetheless

28

found that the correct rendition of the law by both counsel was insufficient to overcome the presumption that the jury could have followed the instructions given by the trial court and could have based its finding of guilt on the erroneous intent. Accordingly, the Court held that counsel's failure to object to the erroneous instruction was itself ineffective assistance of counsel that required relief. *See id.* at 265 (reversing denial of habeas relief and remanding for issuance of writ absent prompt retrial). Here in *Harris*, the majority is willing to sweep the same error under the rug and to ignore completely the unsavory effect of incorrect argument by both defense counsel and the prosecuting attorney.

The majority argues that *Gray* is distinguishable because Gray availed himself of an opportunity to terminate his offense, supporting an inference that he had only a specific intent to commit great bodily harm, while Harris did not avail himself of several opportunities to terminate his offense, suggesting that he had a specific intent to kill Ms. Jackson. But Gray was undeniably tried on the theory that he intended to kill his victim. *See id.* at 270 & n.13. Harris, on the other hand, was tried on the theory that he was trying to kidnap his victim, the theory that was overturned on appeal. Given that kidnaping was the state's controlling theory at trial, the majority is in effect deciding that the jury based its verdict upon a theory that was never argued or presented at trial.

29

I conclude that there is more than a reasonable possibility that the jury convicted Harris upon a finding that Harris had an intent to inflict great bodily harm while engaged in an attempt to kidnap Ms. Jackson. Such a showing is insufficient to support an attempted murder conviction in Louisiana. I would, therefore, not find the error harmless.

## II.

I am also troubled by the panel majority's conclusory statement in footnote 11 that a finding of harmless error under *Brecht* necessarily requires a finding that a habeas petitioner cannot make a showing of prejudice under *Strickland*. While it may be true in the abstract that the threshold for establishing harmless error is semantically more lenient to habeas petitioners than the threshold for establishing *Strickland* prejudice, I do not believe that there is such a congruence of interests and factual circumstances that we can establish such a precedent without thoughtfully considering each habeas claim under its own appropriate standards. Whether trial counsel's failure to understand and to require an appropriate instruction upon the essential elements of the crime with which his client was charged, compounded by counsel's own erroneous presentation of those elements to the jury, prejudiced Harris in this case should be fully developed in the opinion. We should not avoid our obligation

30

to consider the impact of counsel's conceded deficiencies by simply formulating some equation between the standards governing Harris' due process claim and the standards governing his ineffective assistance claim. Moreover, I do not read *Kyles v. Whitley*, 115 S. Ct. 1555, 1566-67 (1995), cited in footnote 11 by the majority, as even inferentially supporting such notion.

With regard to the *Strickland* prejudice inquiry, I would once again rely heavily upon our precedent in *Gray*. I realize that harmless error analysis and *Strickland* prejudice analysis are both highly dependent upon the factual circumstances of each case. That does not mean, however, that we are free to abandon what we have said before about the various factors and circumstances that are significant to those inquiries. I am unable to reconcile this Court's conclusion that counsel's failure to object to an obviously erroneous instruction with respect to an essential element of the crime was prejudicial in *Gray*, with the panel majority's holding that the same failure, coupled with egregiously incorrect argument from both sides, was not prejudicial here in *Harris*.

I respectfully dissent.