606 So.2d 972 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Andrea HALL, Defendant-Appellant.
No. Cr91-1296.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
*973 Louis Vogt, Vidalia, for defendant-appellant.
John F. Johnson, Dist. Atty., Vidalia, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and COREIL[*] and PATIN[*], JJ. Pro Tem.
JOHN A. PATIN, Judge Pro Tem.
Defendant Andrea Hall appeals his conviction and sentence on two counts of attempted second degree murder.
On October 24, 1990 Andrea Hall was charged by bill of information with two counts of attempted second degree murder. La.R.S. 14:27 and La.R.S. 14:30.1. Following pleas of not guilty he was tried by jury and found guilty as charged. He was then charged by bill of information under the Louisiana Habitual Offender Law. La.R.S. 15:529.1. The trial court found him guilty of being a second felony offender. The sentence imposed on July 24, 1991 was as follows: on count one, one hundred years at hard labor; on count two, one hundred years at hard labor; sentences to run consecutively. This appeal is from these convictions and sentences.
As his first assignment of error the defendant claims the judgment is contrary to the law and evidence because the state did not prove the shooting of Joe Lewis Atkins and Theron Long was not done in self-defense.
When a defendant in a homicide case claims self-defense, the state has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense, State v. Garcia, 483 So.2d 953 (La.1986). In non-homicide cases, such as this, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. State v. Barnes, 491 So.2d 42 (La.App. 5 Cir.1986); State v. Mason, 499 So.2d 551 (La.App. 2 Cir.1986). The issue of self-defense requires a dual *974 inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; (2) a subjective inquiry into whether the force was apparently necessary, State v. Perkins, 527 So.2d 48 (La. App. 3 Cir.1988).
When the attempt statute is invoked and the charge is attempted second degree murder, it is required that the person have the specific intent to kill a human being. State v. Guin, 444 So.2d 625 (La.App. 3 Cir.1983). La.R.S. 14:10 provides in pertinent part:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
At trial, Theron Long testified that on the night of July 3, 1990, he had gone out with a friend to a nightclub, where he saw Joe Lewis Atkins. Atkins was standing alone outside the club. Long began talking with him. He did not observe a weapon, gun or knife on Atkins. While standing there, Long heard a gunshot from behind them. Atkins ducked behind Long and they were both shot. Several more shots were then heard. Long observed a man coming toward them. As Long and Atkins ran in different directions, Long saw the man "going after Atkins". Long described the gunfire as "steady shooting". Long also heard a statement coming from the direction of the man who was shooting: "I told you I was going to get you."
Long further testified that Atkins did not make any threats or movement toward the man and did not pull a weapon. Long was treated at the hospital for his injury where a bullet entered and exited his body.
Doretta Lee testified about an earlier encounter between Atkins and the defendant which ended in a fight. She was present at the scene of the shooting on July 3. She saw defendant leaving the scene and asked him why he shot Atkins. Defendant responded that it was because Atkins had beat him with a stick, referring to the earlier incident at her house.
Evelyn Lee corroborated Doretta's testimony. Evelyn testified that defendant had hit her with brass knuckles during their altercation. She had to have her lip stitched at the hospital.
Testimony was also heard from Roosevelt Wellington, who testified that prior to the shooting, defendant asked him to deliver a message to Atkins. Defendant wanted to meet Atkins at a designated spot. Wellington gave the message to Atkins, but Atkins did not meet defendant as requested. On the night of the shooting, Wellington saw defendant, who asked him if he had seen Atkins. Defendant then observed Atkins talking to Long and started shooting. After defendant emptied his gun, someone told defendant to give up. At that point, Wellington thought defendant was attempting to reload his gun. On cross examination, Wellington stated he had told defendant that Atkins and two other men were looking for him. Wellington heard this information from an individual whom he did not know; he did not hear this statement from Atkins. Defendant told him that he would not be hard to find.
Louis Matthews, Jr., a witness to the shooting, testified that Long and Atkins were outside the club engaged in friendly conversation when defendant came running down the road stating "I told you I was going to get you" and began shooting. Matthews stated that Atkins made no moves toward defendant and began running away from defendant.
Joe Lewis Atkins testified about the incident at Doretta Lee's house. After this altercation Atkins did not want to have anything else to do with defendant. Atkins claimed he did not hit defendant with a stick and did not go to Doretta's house with the intention of fighting with defendant. Atkins also stated that defendant had reached for his knife.
Atkins further testified that on the night of the shooting, he received a message from Roosevelt Wellington to meet defendant; however, he never went to meet defendant. Atkins was not carrying a weapon that night. As the defendant came toward Atkins and Long, both men turned *975 around and defendant began shooting. When Atkins was hit, he ducked, attempting to "go around" Long. Atkins stated he did not grab Long to pull Long in front of him. Atkins went into the bayou and heard defendant say "Come on out because I want to kill you."
Atkins testified that he was shot in the left part of his hip and the bullet cannot be removed. He stated that he made no threatening moves toward defendant and did not even acknowledge his presence.
Defendant testified on his own behalf. Defendant admitted that he has been previously convicted for armed robbery and two counts of simple burglary, having pled guilty to these offenses. Defendant eventually turned himself in to the police for the instant offense because the officers kept coming to his house bothering his mother and he knew he was defending himself. Defendant does not deny firing the shots. Roger Hollins, a patrolman, testified that the police were looking for defendant until he turned himself in on August 15, 1990, at 3:00 a.m.
Defendant also stated that Atkins came to Doretta's mother's house, where defendant and Doretta were staying, and "busted me in the back of the head with a stick." Defendant claims Atkins hit him on his arm and leg also. Defendant also claims Atkins told him the following: "It ain't over with yet. I'm going to come back. I'm going to get some of my friends, and we're going to finish."
On the night of the shooting, defendant claimed that an associate of his told him Atkins was looking for him and had a gun. Roosevelt Wellington also told him that Atkins and two other men were looking for him. Defendant claims he told Wellington to tell Atkins he was not hard to find, but denies arranging to meet Atkins at a certain place to fight. After this, defendant went home, got his gun, and went to the nightclub looking for Doretta. As he approached the club, he saw Atkins standing by a car talking. Atkins noticed defendant and "started reaching like he was reaching for a gun." Defendant then pulled out his gun and yelled "move". Long jumped to the side, but Atkins pulled him back in front of him. Defendant then fired, trying to shoot Atkins. Defendant stated that the gun he thought Atkins was reaching for turned out to be a little knife. Defendant testified that he never intended to harm Long; he only intended to protect himself. On cross examination, defendant stated that before he fired his gun, Atkins had taken two or three steps toward him. Defendant admitted that Atkins never pulled his knife.
La.R.S. 14:27 provides:
A. Any person who, having specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La.R.S. 14:30.1 provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
La.R.S. 14:19, regarding self-defense, provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
From the evidence submitted the jury could have found the essential elements of attempted second degree murder as to Joe Lewis Atkins beyond a reasonable doubt and that defendant has failed to prove self-defense by a preponderance of the evidence. As stated above, defendant must have had the specific intent to kill. State v. Guin, supra. Theron Long testified at trial that he heard defendant say "I told you I was going to get you", referring *976 to Atkins. Doretta Lee testified that after the shooting, defendant told her he shot Atkins "because he beat me with a stick" and stated that he meant to shoot Atkins. Immediately prior to the shooting, Roosevelt Wellington saw defendant, who stated he was looking for Atkins. Wellington even thought defendant was trying to reload his gun after shooting at Atkins, who began to run away. Further, Atkins testified that defendant told him "Come on out because I want to kill you." Defendant even admitted that he was trying to shoot Atkins. Any rational trier of fact could have found beyond a reasonable doubt that defendant had the specific intent to kill Atkins.
As for his claim of self-defense, defendant asserts that he armed himself with a pistol in reasonable fear for his safety and as he approached Atkins he fired, fearing immediate great bodily harm and having no means of escape. However, Long testified that he never observed a weapon on Atkins. Atkins and two other witnesses stated that no moves were made toward defendant. Defendant even admitted Atkins never pulled anything from his pocket. Defendant did not carry his burden of proving self-defense as to Atkins by a preponderance of the evidence.
As for the other victim, Theron Long, the state has also proved a specific intent to kill and that defendant has failed to prove self-defense by a preponderance of the evidence. By shooting at Atkins with a gun, with Long standing next to him, defendant must have actively desired the criminal consequences to result. In State v. Kennington, 515 So.2d 521 (La.App. 1 Cir.1987), the defendant pointed a gun at a crowd and fired two shots. An innocent bystander was killed. Defendant was convicted of second degree murder. The court stated: "The evidence showing that defendant fired a lethal weapon, aimed in the direction of a crowd of innocent bystanders, is clearly sufficient to prove she had the specific intent to kill or to inflict great bodily harm." In the instant case, defendant fired a lethal weapon at two persons, which is sufficient to prove that defendant had the specific intent to kill Atkins and Long. Further, in State v. Tyler, 342 So.2d 574 (La.1977), in which the defendant was convicted of first degree murder by firing a gun into a crowd and thereby killing someone, the court stated that "there is authority in law for the proposition that shooting into a crowd indiscriminately with intent to kill someone is an assault with intent to kill each of them." The court found defendant guilty of first degree murder because of his intent to kill or inflict great bodily harm upon more than one person at the time of the shooting. The law does not require that the intent to kill be of the specific victim but only that the defendant had the intent to kill someone. No evidence was presented by defendant regarding self-defense as to Long.
This assignment of error lacks merit.
In his second assignment of error, defendant claims his sentences are excessive.
Article 1, § 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
After defendant's conviction, the state filed a bill of information charging defendant as a habitual offender. Defendant had been previously convicted of armed robbery and two counts of simple burglary in 1985. The instant offense occurred only *977 a few months after defendant had been released from prison on his prior convictions.
The punishment for second degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.R.S. 14:30.1. La.R.S. 14:27 provides in pertinent part:
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years.
La.R.S. 15:529.1, the habitual offender statute provides:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
Therefore, the sentencing range for defendant was from twenty-five years to one hundred years. Defendant was sentenced to one hundred years on each count, the sentences to run consecutively.
At the sentencing hearing, the state referred to defendant's prior offenses in 1985: armed robbery and two counts of simple burglary. The state claimed that after his release, defendant was known to habitually carry a large butcher type knife and had beaten a woman with a pair of brass knuckles. While incarcerated for the instant offense, the state stated that defendant stabbed two different inmates and attacked one of the jailers with a razor. Further, on the day of the sentencing hearing, defendant had gotten out of his shackles and was prepared to use the chains and shackles as a weapon. The presentence investigation report reveals that based on the above incidents, defendant was charged twice with aggravated battery and one count of attempted second degree murder.
In giving reasons for the sentence imposed, the trial judge stated that defendant would have a tendency to commit another crime and has shown a propensity to violence. Further, defendant showed no remorse and the victim who was shot in the chest, Long, could have easily been killed. Defendant's conduct threatened serious harm and defendant did not act under strong provocation. The judge also stated he saw no indication that defendant would respond to probationary treatment.
We have found only one case wherein the defendant was convicted under similar facts. In State v. Williams, 435 So.2d 1047 (La.App. 5 Cir.1983), writ denied, 439 So.2d 1074 (La.1983), a sentence of one hundred years imprisonment for one count of attempted murder and being a habitual offender was found to not constitute cruel and unusual punishment in light of the fact that defendant fired his gun at a police officer in a crowded public establishment in complete disregard for the safety of the intended victim and the bar patrons.
In the instant case, defendant fired his gun in the parking lot of a nightclub where the victim and others were congregated. This was in complete disregard for the safety of these individuals. Two men were actually shot and wounded. Because of defendant's prior convictions, he was adjudged a habitual offender. Based on incidents which occurred during defendant's incarceration, defendant was charged twice with aggravated battery and a charge of attempted second degree murder is pending. As stated by the trial judge, defendant shows a tendency to commit other crimes, based on his propensity to violence. Defendant has shown no remorse and death could have easily resulted from the shooting incident.
*978 The facts in this case do not justify disturbing the sentences imposed. There is no merit to this assignment.
In his third assignment of error, defendant contends the trial court erred in considering evidence of other crimes of which he had not been convicted and he is innocent of these alleged crimes which are only unproven allegations.
The other crimes to which defendant refers were brought out by the state at the sentencing hearing and were also contained in the pre-sentence investigation report. The state claimed that defendant carried a large butcher knife and had beaten a woman with a pair of brass knuckles. Further, during his incarceration pending trial for the instant offenses, defendant stabbed two different inmates and attacked one of the jailers with a razor.
The sources of information from which a sentencing judge may draw are extensive. It is entirely appropriate for the trial judge to consider criminal activity which has not led to a conviction. State v. Jones, 546 So.2d 1343 (La.App. 3 Cir.1989). In State v. Berry, 534 So.2d 70 (La.App. 3 Cir.1988), writ denied, 540 So.2d 326 (La. 1989), the trial court considered the defendant's two previous arrests in determining sentence. Both charges were apparently dismissed or rejected. This court stated: "The trial court can consider arrests, not just convictions, in determining an appropriate sentence."
This assignment of error lacks merit.
Through his fourth assignment of error, defendant claims his right to counsel was violated during the sentencing hearing because he was gagged and his hands were in handcuffs, thereby preventing him from consulting with his attorney or communicating to the judge any mitigating circumstances.
At the sentencing hearing the judge stated:
COURT: All right. I'd like to note for the record Mr. Hall is bound and gagged and shackled and there was serious difficulty in obtaining his presence in court this morning. He is accompanied by his lawyer, Mr. Louis Vogt, but he is unable to speak. He is conscious and he can hear the proceedings. He's not mentally or physically impaired, other than he cannot speak. Mr. Vogt, do you have anything to say?
VOGT: No sir, Your Honor.
DEFENDANT: (Muffled statement.)
The state also made the following statement during the sentencing hearing:
This morning when they came to get him out of his cell, he had papered up the window on the cell so he couldn't be seen. He had gotten out of his shackles and had the chains and shackles ready and prepared to use as a weapon, and no doubt, would have used them on anybody he could have got his hands on.
Although defense counsel does not state in his brief why he was gagged and handcuffed, the facts in the cited statement could have been the reason for the difficulty in obtaining defendant's presence at the sentencing hearing.
In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court of the United States laid down guidelines for the trial of a disruptive defendant as follows:
It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.
The Louisiana Supreme Court has recognized that the use of restraining devices, *979 including manacles, is within the sound discretion of the trial judge. In the absence of a clear showing of abuse of discretion on the part of the trial judge, a conviction will not be disturbed on appeal because of the restraint imposed upon a defendant. State v. Burnette, 337 So.2d 1096 (La.1976).
In the instant case the trial judge did not clearly abuse his discretion. The defendant's behavior earlier that morning explains the need for restraints. Defendant has failed to demonstrate how he was prejudiced. He has failed to show what mitigating evidence he would have given to the court or what information he would have given to defense counsel. Given the trial judge's wide discretion, we cannot say that the gagging and handcuffing of defendant was unnecessary.
This assignment of error lacks merit.
Defendant filed a pro se Motion to Supplement Appeal, which alleged that he was denied effective assistance of counsel. Defendant claims that the trial judge gave a misleading jury instruction regarding an essential element of the crime. Defense counsel allegedly failed to object to this instruction. However, defendant has provided this court with only the alleged written instructions and not the actual transcript of the instructions given. This assignment of error was not designated in the assignments of error filed with the trial court.
Defendant contends that the trial judge instructed the jury that to find defendant guilty of attempted second degree murder, it must find that defendant had the specific intent to kill or to inflict great bodily harm. Further, defense counsel failed to object to this instruction, which defendant contends denied him effective assistance of counsel.
A claim of ineffective assistance of counsel is properly raised in a petition for post-conviction relief. Where, however, the record contains evidence necessary to decide the issue and the alleged ineffectiveness is raised on appeal by an assignment of error, the issue should be considered. See State v. Seiss, 428 So.2d 444 (La.1983); State v. Heacox, 543 So.2d 101 (La.App. 3 Cir.1989).
The only evidence of the alleged erroneous jury instructions is a copy of written instructions, as stated above. The closing arguments and the actual instructions given to the jury are not contained in the record on appeal and have not been provided by defendant.
The Sixth and Fourteenth Amendments guarantee the defendant in a state criminal proceeding assistance of counsel for his defense. The United States Supreme Court has held that "... The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970).
In outlining the convicted defendant's burden of proof in an ineffective assistance case, the courts have composed a two fold test. The defendant must show that a deficient performance on the part of his attorney prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La.1987).
The first prong of the test requires a showing of deficiency on the part of the defense counsel; this inquiry examines whether counsel violated some duty to the client. State v. Berry, 430 So.2d 1005 (La. 1983); State v. Hartman, 479 So.2d 948 (La.App. 3 Cir.1986), writ denied, 486 So.2d 748 (La.1986). The second prong of the test requires a showing of prejudice resulting from defense counsel's deficient performance. This inquiry examines whether "... there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra.
The deficiency and prejudice prongs may be addressed in either order. "... [A] court need not determine whether counsel's performance was deficient as a result of the alleged deficiencies. The object of an ineffective claim is not to grade counsel's performance. If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be *980 followed." Strickland v. Washington, supra.
The instructions submitted by defendant reveal that the trial judge first read the attempt statute, La.R.S. 14:27, and the second degree murder statute, La.R.S. 14:30.1. The judge then rephrased La.R.S. 14:30.1, stating that to convict defendant of second degree murder, the jury must find that defendant "killed the victim and that the defendant acted with a specific intent to kill or inflict great bodily harm." Finally, the judge stated:
Thus, in order to convict the defendant of Attempted Second Degree Murder, you must find;
(1) That the defendant had a specific intent to commit the crime of Second Degree Murder; and
(2) That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of Second Degree Murder.
To convict the Defendant of the offense charged, you must find beyond a reasonable doubt that the State proved every element of Attempted Second Degree Murder.
While specific intent to either kill or to inflict great bodily harm will support a conviction of second degree murder under La.R.S. 14:30.1, only specific intent to kill will support a conviction of attempted second degree murder in violation of La.R.S. 14:30.1 and La.R.S. 14:27.
The U.S. Supreme Court has stated that the complete denial of counsel (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)) and adjudication by a biased judge (Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)) constitute structural defects in a trial which cannot be evaluated as harmless error. Other errors which occur during the course of the trial are considered "trial errors" and are subject to a harmless error analysis. Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). An improper jury instruction is a trial error and is subject to such a harmless error evaluation. State v. Cage, 583 So.2d 1125 (La.1991), U.S. cert. denied, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).
The trial error is harmless when a reviewing court is convinced that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This analysis "mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless." United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). If a reviewing court finds that the trial record establishes guilt beyond a reasonable doubt, the interests of justice have been satisfied and the judgment should be affirmed. Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
As previously discussed the trial record establishes the guilt of defendant of two counts of attempted second degree murder beyond a reasonable doubt. The harmless error test should be used in the instant case and in applying such, the erroneous jury charge constituted harmless error under the cited cases, and therefore, relator has failed to show how he was prejudiced by his attorney's failure to object. The entire record establishes defendant's intent to kill Atkins and Long beyond a reasonable doubt.
This assignment of error lacks merit.
For the foregoing reasons the conviction and sentences herein are affirmed.
AFFIRMED.
NOTES
[*] Judges Joseph E. Coreil and John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.