NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-900

STATE OF LOUISIANA

VERSUS

KENDRICK M. WILLIAMS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C14104
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.

CONVICTIONS AND SENTENCES AFFIRMED.

R. Stuart Wright
Assistant District Attorney
P. O. Box 838
Natchitoches, LA 71458-0838
(318) 357-2214
Counsel for Appellee:
    State of Louisiana

**Alex J. Washington**
**Washington & Wells**
**401 Edwards Street, Suite 1111**
**Shreveport, LA 71101**
**(318) 841-1233**
**Counsel for Defendant/Appellant:**
    **Kendrick M. Williams**

**DECUIR, Judge.**

Defendant, Kendrick M. Williams, was indicted on one count of second degree murder, in violation of La.R.S. 14:30.1; two counts of attempted second degree murder, in violation of La.R.S. 14:30.1 and La.R.S. 14:27; and one count of possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. Following a trial by jury, Defendant was found guilty as charged. For the second degree murder conviction, the district court sentenced Defendant to serve life imprisonment. For each of the attempted second degree murder convictions, the sentencing court ordered Defendant to serve twenty-five years at hard labor. On the firearm charge, the district court imposed ten years at hard labor. The sentences are to run consecutively and will be served without benefit of probation, parole, or suspension of sentence. Defendant now appeals, asserting two assignments of error: insufficiency of the evidence and failure of the trial court to grant a mistrial.

**STATEMENT OF FACTS:**

The evidence in the record before us reveals the following facts: On March 13, 2008, Shanay Calhoun, Leroi Watson and Shanay Calhoun's five-year-old son were riding in their 1999 white Chevrolet Suburban toward Texas Street in Natchitoches. Calhoun was driving, Watson was in the front passenger seat, and the five-year-old child was in the back seat. As the Suburban traveled down Sixth Street, near the intersection with Texas Street, Defendant and three friends blocked the road so that Calhoun could not pass. The testimony revealed that there had been some prior animosity between Watson and Defendant concerning Calhoun. The testimony from disinterested eye-witnesses indicated that Watson exited the vehicle and walked out into the street not far from Defendant. He pulled up his shirt to show that he was not armed, and they exchanged words. As Defendant pulled out a 40-caliber pistol,

Watson returned to the Suburban and proceeded to climb in through the open passenger door. Defendant started shooting, and Calhoun put the vehicle in reverse as Watson fell into the Suburban.

As the victims were leaving, Defendant continued to shoot at the Suburban. The eye-witnesses stated that Defendant was pointing the gun at the driver Calhoun. Watson retrieved a gun, a 10-millimeter pistol, from inside the Suburban and attempted to return fire. However, because the car was in motion at a high rate of speed, his shots were flying all over the place. At some point, a bullet from the 40-caliber pistol went through the windshield and struck Calhoun in the neck, severing her carotid artery. She lost control of the vehicle and it flipped on its side. Calhoun was thrown from the vehicle, and when Watson went to check on her, she was already dead.

Watson pulled the five-year-old child from the overturned Suburban and attempted to flee the scene. As he ran, he was shot in the leg by someone in Defendant's group. Watson was able to get the child to his grandmother's house right up the street; then he frantically returned to Calhoun and the wrecked Suburban. About this time, law enforcement officers arrived at the scene.

After firing numerous shots at the Suburban, Defendant fled the scene. It was later determined that he disposed of the gun, and it was never retrieved by law enforcement.

**ASSIGNMENT OF ERROR NO. 1:**

Defendant argues, "[t]he evidence was insufficient to convict the defendant of Second degree murder, (2 counts) Attempted second degree murder, and Possession of a firearm by a convicted felon." He asserts the issue of self-defense was raised at

2

trial, and the State failed to meet its burden of proving the shootings were not in self-defense. He contends Watson fired the first shots and had a long arrest record, which included crimes of violence. Defendant further maintains that Watson was the aggressor at all times, as Watson shot at him three weeks before the instant incident and Watson previously appeared at Defendant's residence with a pistol. Defendant adds that Watson and Calhoun could have stopped the incident by driving in another direction before the incident took place.

In response, the State explains that the two neutral eyewitnesses testified to a different set of circumstances. Instead of recounting the facts urged by the defense, they stated four men came into the street and stopped the Suburban driven by Calhoun. Watson exited the vehicle, pulled up his shirt to show he was not armed, and held his empty hands open. Defendant pulled a handgun, aimed at the driver with both hands, and fired two shots. Neither of the witnesses saw anyone except Defendant firing a weapon. The State contends that Defendant's own testimony admitted he fled the scene and hid the gun, which supports a finding of Defendant's guilt.

STANDARD OF REVIEW:

The Louisiana Supreme Court has discussed the standard of review for evaluating the sufficiency of the evidence on appeal:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent

3

necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

MURDER:

Defendant was convicted of one count of second degree murder, which "is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm." La.R.S. 14:30.1(A)(1). "Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction." *State v. Emanuel-Dunn*, 03-550, p. 5 (La.App. 1 Cir. 11/7/03), 868 So.2d 75, 79, *writ denied*, 04-339 (La. 6/25/04), 876 So.2d 829.

Defendant claimed his actions were justified because he was acting in self-defense. "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . (7) When the offender's conduct is in defense of persons or of property[.]" La.R.S. 14:18.

Under certain circumstances, killing someone can be justified. "A homicide is justifiable: (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20. "When a defendant charged with a homicide claims self-defense, the State has the burden of establishing beyond a reasonable doubt that he did not act in self-defense." *Emanuel-Dunn*, 868 So.2d at 79 (citing *State v. Rosiere*, 488 So.2d 965 (La.1986)).

Under La.R.S. 14:21, the aggressor in a dispute cannot claim self-defense: "A person who is the aggressor or who brings on a difficulty cannot claim the right of

self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."

Our review of the evidence shows that Defendant and his friends blocked the road and stopped the vehicle driven by Calhoun. Following a verbal confrontation with Watson, Defendant, standing in front of the automobile, drew a gun, aimed at Calhoun, and shot her. When Defendant first pulled the firearm, Calhoun began to back the Suburban away from Defendant and his friends. Calhoun was not armed at any time during the incident, and she did not attempt to get away by driving over Defendant and his three friends who were still in front of the Suburban. Though the defense presented evidence that Defendant had been standing behind the automobile and Calhoun attempted to run him down, this evidence was self-serving and not credible.

In *Emanuel-Dunn*, the victim approached the defendant's car and engaged him in conversation before moving away from the vehicle while the defendant exited the automobile. Neutral eyewitnesses stated that when they saw the defendant pull a gun from under his shirt, they tried to get away. After hearing gunfire, they saw the victim turn as if trying to get away, but the defendant continued steadily shooting at the unarmed victim. In contrast, the defendant testified that the victim approached him in a hostile manner and engaged in a physical altercation with the defendant once the defendant exited the car. Also according to the defendant, the victim then "reached." When the defendant pulled his firearm, the victim wrestled with him for control of the gun; it went off and shot the victim in the mouth. The defendant's friend testified in support of the defense. The first circuit found that, as the

5

sufficiency of the evidence rested on the credibility of the witnesses, there was sufficient evidence to support the defendant's conviction for second degree murder. Moreover, as the aggressor in the transaction, the defendant was not entitled to claim self-defense.

As in *Emanuel-Dunn*, the sufficiency of the evidence in this case rests on the credibility of the witnesses. When the facts are viewed in a light most favorable to the prosecution, they show beyond a reasonable doubt that Defendant was guilty of the second degree murder of Calhoun, who was unarmed, made no threatening moves toward Defendant, and was trying to drive away from Defendant when he shot her. When the evidence is viewed in the light most favorable to the prosecution, Defendant was the aggressor in the situation and not entitled to claim self-defense. Thus, a rational trier of fact could have found Defendant guilty of second degree murder.

Accordingly, Defendant's dual contentions that the State failed to meet its burden of disproving his self-defense claim and of proving him guilty of second degree murder are both without merit.

ATTEMPTED MURDER:

Defendant was also convicted of two counts of attempted second degree murder:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A). When a defendant is charged with attempted second degree murder, the State is required to prove the specific intent to kill a human being. *State*

*v. Hall*, 606 So.2d 972, 974 (La.App. 3 Cir. 1992), *writ denied*, 93-51 (La. 11/11/94), 644 So.2d 385. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).

A different justification provision applies to Defendant's self-defense claims for the two attempted second degree murder convictions:

> A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person . . . provided that the force or violence used must be reasonable and apparently necessary to prevent such offense . . . .
>
> . . . .
>
> C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using force or violence as provided for in this Section and may stand his or her ground and meet force with force.

La.R.S. 14:19. "In non-homicide cases, . . . the defendant [has] the burden of proving self-defense by a preponderance of the evidence. The issue of self-defense requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable . . . ; [and] (2) a subjective inquiry into whether the force was apparently necessary." *Hall*, 606 So.2d at 973-74 (citations omitted).

The evidence most favorable to the prosecution showed that Defendant stopped the vehicle Watson was riding in by forming a human barricade in the street. Watson, unarmed, exited the vehicle and engaged in a verbal exchange with Defendant, who drew a gun as Watson turned to reenter the Suburban. After shooting the driver of the vehicle, Defendant continued to shoot at the Suburban as Watson, acting in defense of himself and the unarmed child inside the Suburban, grabbed a firearm and returned fire; the out-of-control swerving of the vehicle jerked Watson's arm and

7

prevented him from aiming. Defendant admitted to both leaving the scene and disposing of his handgun after the Suburban crashed.

Though the defense claimed Watson fired first and instructed Calhoun to run Defendant over, the only evidence supporting this claim was the testimony given by a friend of Defendant plus the self-serving accounts given by Defendant and the four young men reported to have been accomplices in the matter. Defendant also attempted to explain his flight and disposal of evidence in the case.

In *State v. Wilson*, 42,440 (La.App. 2 Cir. 9/19/07), 965 So.2d 992, *writ denied*, 07-2084 (La. 3/7/08), 977 So.2d 898, the defendant was convicted of second degree murder and attempted second degree murder based upon facts showing he fired bullets into a vehicle, killing one person and injuring another. On appeal, the defendant asserted the State failed to prove he had specific intent and that his actions were justified as self-defense. Though the defendant claimed he shot at the tires of the victims' vehicle because it swerved into the path of his truck, the second circuit held that it was within the province of the jury to disbelieve the defendant's claims based upon the evidence presented at trial.

The contradicting evidence in *Wilson* showed that the defendant followed the victims when they left a nightclub; the defendant then fired at least sixteen shots at the victims' vehicle as he passed it in his truck. After the shooting, the defendant concealed evidence by disposing of the shell casings and hiding the firearm. The defendant also fled the area for two days before eventually turning himself into authorities. Noting that the defendant's flight and attempt to avoid apprehension gave rise to an inference of guilty conscience, the second circuit found sufficient evidence to prove the defendant's specific intent to kill.

8

In the present case, the issue of sufficiency of the evidence again rests upon witness credibility. The factfinder found the testimony of the neutral witnesses and Watson to be more believable than that given by the defense witnesses. When the evidence is viewed in the aspect most favorable to the State, it shows that Defendant aimed and fired at the Suburban with the active desire to kill the occupants, and both Watson and Calhoun's son were occupants of the vehicle at the time. Defendant's actions also caused the Suburban to travel out of control and violently wreck. Though Watson returned fire, Defendant was the aggressor in the situation, and an aggressor who has not attempted to withdraw from the conflict cannot claim self-defense. La.R.S. 14:21.

Accordingly, a rational trier of fact could have found beyond a reasonable doubt that Defendant attempted to kill Watson and the five-year-old boy, and Defendant was not acting in self-defense at the time.

POSSESSION OF A FIREARM BY A CONVICTED FELON:

Defendant's final conviction was for illegal possession of a firearm, in violation of La.R.S. 14:95.1(A): "It is unlawful for any person who has been convicted of . . . simple burglary . . . to possess a firearm or carry a concealed weapon." The statute does not apply to defendants when there is ten years between the completion of sentence, probation, parole, or suspension of sentence and the date of the possession. La.R.S. 14:95.1(C)(1).

The record shows Defendant pled guilty to simple burglary in 1999, and he was under supervision by a probation officer for that offense until May 2002. Defendant admitted at trial that he purchased a handgun and had it in his physical possession on March 13, 2008, which was less than six years after Defendant completed probation.

As before, Defendant argues his possession of the firearm was justified because, following an incident in February 2008, he feared an attack by Watson. At trial, Defendant testified that Watson had previously shot at him and had continued to harass Defendant by driving past his home and pointing a gun at him. However, Defendant never reported the matter to law enforcement.

When "an offender's conduct is justifiable, although otherwise criminal, [it] shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . When the offender's conduct is in defense of persons . . . under any of the circumstances described in Articles 19 through 22." La.R.S. 14:18(7). The action must, however, be reasonable and apparently necessary to prevent a forcible offense or trespass against property in a person's lawful possession. La.R.S. 14:19(A). "'Necessity', when raised as a defense to the illegal possession of a firearm, entails proof that the threat of force by another is *imminent* and *apparent*, and that the person threatened has *no reasonable alternative* but to possess the firearm." *State v. Jackson*, 452 So.2d 776, 779 (La.App. 4 Cir. 1984). Again, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La.R.S. 14:21.

As with the other charges, the issue rests upon the credibility of the witnesses, and credibility determinations are the purview of the factfinder. The jury clearly believed the facts presented by the State. Under those facts, Defendant initiated both the contact and the attack. Because Watson did not initiate contact or threaten Defendant, there was no imminent and apparent threat that would leave Defendant

with no reasonable alternative to possessing the firearm. As the aggressor, Defendant could not claim his possession of the firearm was justified.

Accordingly, there was sufficient evidence to prove the facts of the case met the criteria set forth in La.R.S. 14:95.1(A) and that Defendant was not justified in possessing the pistol.

## ASSIGNMENT OF ERROR NO. 2:

Defendant claims the trial court erred when a mistrial was not granted. Defendant complains that the trial court should have granted a mistrial based on the prosecutor's remark during opening statements that the jury would hear from Defendant during the trial.

The transcript of the State's opening statement shows that counsel was discussing the individuals involved in the case when he mistakenly classified them as witnesses. This is evidenced by the inclusion of Calhoun, the deceased victim in the case. Because Defendant testified at trial, the parties concluded an instruction that Defendant was not required to testify in his own defense would be sufficient to mitigate any damage done by the prosecutor's statement. The State further asserts that its statement does not constitute a remark concerning Defendant's failure to testify; therefore, it does not constitute a prohibited statement under La.Code Crim.P. art. 770.

The record shows that, during opening statements, the prosecutor stated, "There's gonna be a lot of witnesses in this case. Uh, and just some of the main ones that you're gonna hear (inaudible) obviously the defendant is Kendrick . . . Kendrick Williams." At that time, the defense moved for a mistrial on the basis that the prosecutor had attacked his "client's privilege not to testify." After the jury was

excused, the trial court had the court reporter play back the prosecutor's statement. During argument on the matter, the defense maintained that admonishment would not be sufficient in this case. After a recess and discussion in chambers, the district court stated the resolution for the record:

> We've discussed the matter in Chambers. I understand that you have resolved the issue concerning Mr. Whitehead's Motion for a mistrial by an agreement that the Court will make the following statement to the Jury when they come in. Uh . . . there was some mention about who is going to testify. I want to make it clear that the defendant is not required to testify. And then I will tell them that we're going to recess for today and start tomorrow morning with opening statements.

At that time, both the prosecution and defense verbally agreed with the trial court's statement.

Under La.Code Crim.P. art. 770(3), "[u]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the . . . district attorney . . . refers directly or indirectly to: . . . The failure of the defendant to testify in his own defense." Because the prosecutor said Defendant would be testifying and in no way referred to Defendant's failure to testify, La.Code Crim.P. art. 770 does not apply to the instant case. Accordingly, this assignment of error is without merit.

## DECREE

For the above and foregoing reasons, and finding no error patent on the face of the record, we hereby affirm the Defendant's convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.