Judge ROLAND L. BELSOME.
|TIn this criminal appeal, the defendant appeals his attempted second degree murder conviction, and one hundred year habitual offender sentence. We affirm.

STATEMENT OF THE CASE

The defendant, Erice C. Laneheart, was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:27:30.1. He pled not guilty at arraignment. After a hearing, the trial court granted the defendant’s motion to suppress the identification and withheld a probable cause determination. On review, this Court reversed the suppression.[1] Subsequently, the trial court found no probable cause and released defendant from his bond obligation.
After a bench trial, the defendant was found guilty as charged. He was later sentenced to fifty years at hard labor without benefits. At the conclusion of a multiple offender hearing, he was adjudicated a second felony offender. The trial court vacated the previous sentence and sentenced defendant to one hundred years at hard labor without benefits. This appeal followed.

TIMELINESS OF APPEAL

As a preliminary matter, the State submits that the defendant’s appeal is untimely and should not be considered. La. C.Cr.P. art. 914 provides:
*1225 A. A motion for an appeal may be made orally in open court or by filing a written motion with the clerk. The motion shall be entered in the minutes of the court.
B. The motion for an appeal must be made no later than:
(1) Thirty days after the rendition of the judgment or ruling from which the appeal is taken.
(2) Thirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed.
Because no motion to reconsider sentence was filed, the defendant had thirty days from the day after March 7, 2012, to perfect his appeal; however, his motion for appeal was not filed until April 24, 2012, after the delays specified by La.C.Cr.P. art. 914 had expired.
Recently, in State v. Williams, 11-881 (La.App. 5 Cir. 3/27/12), 91 So.Sd 442, the Fifth Circuit considered a similar circumstance. There, the defendant filed an untimely motion for appeal which was granted. Nevertheless, the court concluded that the defendant’s appeal was properly before the court. It noted that the State failed to object to the procedural irregularity. It further reasoned that ordering a dismissal to allow the defendant to properly seek reinstatement of appeal rights would only prolong the proceedings without serving any useful purpose. Id., p. 2, n. 2, 91 So.3d at 443 (citations omitted).
Like in Williams, the defendant failed to timely file a motion; however, the State failed to object to his untimely appeal. As the Williams court stated, dismissing the defendant’s appeal to allow him to properly seek reinstatement | aof his appeal rights would delay the proceedings without reason. Likewise, we find that the defendant’s appeal is properly before this Court.

FACTS

At approximately 10:00 p.m. on October 27, 2010, the defendant shot the twenty-one-year-old victim, Roderick Clanton, who was standing in front of his grandmother’s house at the intersection of Washington Avenue and Danneel Street. A passerby drove the victim to Touro Infirmary, where he was treated for multiple gunshot wounds.
At trial, the victim[2] testified that on the night of the shooting, he was standing on the sidewalk in front of his grandmother’s house with an acquaintance he knew as “Joe.” Though it was late, the victim’s grandmother had her porch light on and there was street lighting in the area. While he was outside, the victim observed a man, whom he knew as “Four,” ride by on a bicycle. He explained that both he and “Four” lived in the same housing development, and that he had known “Four” all of his life.
Shortly thereafter, the victim saw “Four” again on the bicycle, but he had changed his clothes. He was now wearing all black. While the victim was talking to Joe, he heard “Four” utter, “Say.” In response, the victim turned his head to the left; where he observed “Four” begin to shoot at him. He continued to observe “Four” shoot at him, between five and seven times in all, until he fell on the ground. Once the shooting ceased, “Four” *1226 rode away on his bike towards Danneel Street; meanwhile, the victim was taken to the hospital.
14After arriving at the hospital, the victim met with Detective Matthew McCleary of the New Orleans Police Department. He informed the detective that a man he knew only as “Four” shot him. He further explained that “Four” could be identified as the person who was shot at the same corner in June of 2009. Using a reference log of shootings kept by the Sixth District of the New Orleans Police Department, Detective McCleary was able to identify the defendant, Erice Laneheart, as the person who was shot on June 25, 2009. While in the hospital, Detective McCleary presented the victim with a single photograph of the defendant, whom he swiftly identified as his shooter.

DISCUSSION

In the defendant’s two assignments of error, he complains of three trial errors: 1) the evidence was insufficient; 2) his sentence was excessive; and 3) counsel was ineffective.
First, the defendant argues that the State failed to prove his identity as the shooter, as it did not negate the reasonable probability of misidentification. Thus, he concludes that the evidence was insufficient to support his conviction.
When reviewing the sufficiency of the evidence to support a conviction, this court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
⅞⅛ addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 821 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
*1227 A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Winston, 11-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
When the identity of the defendant as the perpetrator is disputed, the State must negate any reasonable probability of misidentifieation in order to satisfy its burden under Jackson v. Virginia, supra. State v. Galle, 11-0930, p. 31 (La. App. 4 Cir. 2/13/13), 107 So.3d 916, 935; State v. Everett, 11-0714, p. 15 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 619, writs denied, 12-1593, 12-1610 (La.2/8/13), 108 So.3d 77. The appellate court also reviews the reliability of an identification in accordance with the factors set out in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which are: 1) the opportunity of the witness to view the assailant at the time of the crime; 2) the witness’s degree of attention; 3) the accuracy of the witness’s prior description of the assailant; 4) the level of certainty demonstrated by the witness; and 5) the length of time between the crime and the confrontation. State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639. Further, this Court has upheld one-photograph identifications where the victims have known their assailants. See State v. Weber, 02-0618 (La.App. 4 Cir. 12/4/02), 834 So.2d 540; and State v. Salone, 93-1635 (La.App. 4 Cir. 12/28/94), 648 So.2d 494.
The defendant primarily relies on the Manson factors to establish that the one-photo identification was completely unreliable. We disagree. Our review of the record establishes that the victim had an opportunity to view his assailant before, during, and after the shooting. In addition, the victim’s attention was drawn directly to the shooter when the shooter spoke to him and he turned to the left to face the shooter. He also watched the shooter as he was being shot, before he fell to the ground. Further, the victim led Detective McCleary to the defendant, |7when he informed him that the shooter, whom he had known since childhood as “Four,” was shot at the same intersection in June of 2009. Finally, without hesitation, he positively identified the defendant as the shooter within an hour of the shooting.
To support his misidentifieation defense, the defendant points to four major discrepancies involving: 1) the victim’s physical description of him to the police; 2) the victim’s account of the shooting; 3) the victim’s testimony that he knew him all of his life; and 4) the absence of evidence of establishing that his alias is “Four.”
First, the defendant alleges that the victim’s initial description to the police, which was contained in the application for arrest warrant, was inaccurate. Although the arrest warrant is contained in the appellate record, it was not admitted into evidence in the trial court. Thus, it does not form part of this appeal.
Second, the defendant contends that it was impossible for him to ride a bicycle, as alleged by the victim, because he had a rod in his leg that prevented him from pedaling. While the defendant confirmed this fact at trial, there was no medical evidence presented to substantiate his self-serving *1228 testimony. Since there was no physical evidence that contradicted the victim’s account of the events, we cannot disturb the trial court’s reasonable credibility determination on this issue.
Third, the defendant claims that since he spent most of the victim’s childhood in jail, it was impossible for the victim to have known him all of his life. In particular, the victim testified that he saw the defendant consistently throughout his childhood beginning about age five, as the defendant was a family friend. However, when asked to pinpoint exactly when, he responded that he did not recall the exact age or year. He also explained that the defendant went to jail at some | spoint and he did not see him during those years, but he could not recall the exact years. Even though the victim may have been unclear about the frequency of his encounters with the defendant, he was certain that he had seen the defendant often enough to know who he was.
Significantly, the defendant testified that there was approximately eleven months between his jail stints in between 1993 and 1994, where he would have gone back to the housing development to visit his family, although he did not live there. According to his testimony, he was later released again in 2007. In 1994, the victim would have celebrated his fifth birthday. This makes the victim’s account of the events reasonable, and without an irreconcilable conflict, we cannot disturb the trial court’s reasonable credibility determination. Here, the trial court clearly credited the victim’s testimony identifying the defendant as the gunmen, believing he was someone whom he had known since childhood.
Finally, the defendant highlights that there was no record of him ever using the nickname “Four,” until his arrest for the instant crime. As the State points out, this contention is incorrect. In fact, State’s Exhibit 8, a document associated with the defendant’s juvenile detention, established this fact. This further supports the accuracy of the victim’s identification.
Given these circumstances, we find that the identification was reliable. Since there was ample evidence to establish that the victim knew his assailant, we find that the State negated any reasonable likelihood of misidentification. Viewing the evidence in a light favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant shot the victim, while having the specific intent to kill or inflict great bodily harm upon him. 1^Accordingly, we find there was sufficient evidence to support the defendant’s conviction.
In his remaining assignment, the defendant makes two arguments concerning his sentence: 1) the sentence is excessive; and 2) his counsel was ineffective in not objecting to or filing a motion for reconsideration of sentence.
In addressing his first argument, the defendant concedes that his trial counsel failed to make an oral motion, file a written motion for reconsideration of sentence, or object to the sentence in any way. Therefore, the defendant is precluded from raising the claim of excessive sentence. La. C.C.P. arts. 841 and 881.1; and State v. Tyler, 98-1667, p. 14 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775. In Tyler, the defendant failed to file a motion for reconsideration of sentence or to object to the sentence, and this court found that he had failed to preserve his argument for appeal, and he was precluded from arguing that the trial court failed to follow La. C.Cr.P. art. 894.1 in sentencing him.
*1229 In reference to his second argument, the defendant contends that if this court’s review of his sentence is precluded due to counsel’s failure to object or file a motion to reconsider the sentence, such lapse on counsel’s part amounts to ineffective assistance of counsel.
As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted. State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on appeal. State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. We find the trial judge’s comments during | ^sentencing are adequate; therefore, the record is sufficient and the issue of ineffective assistance of counsel shall be addressed.
For a defendant to be successful in a claim of ineffective assistance of counsel, he must show that counsel’s performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel’s performance is considered ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Id. Likewise, counsel’s deficient performance will have prejudiced the defendant if the errors were so serious as to deprive the defendant of a fair trial. Id. To carry this burden, a defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been differ-
ent.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. This Court has recognized that a defendant must make both showings to establish that counsel was so ineffective as to require reversal. State v. Jenkins, 09-1551, pp. 4-5 (La.App. 4 Cir. 6/30/10), 45 So.3d 173, 176 (citation omitted).
Thus, to prevail on this claim the defendant must show that there is a reasonable probability that, had defense counsel objected to or filed a motion to reconsider sentence and preserved the sentencing issue raised in his first argument, this court would have found merit in that argument. This brings us to a consideration of the defendant’s contention, as expressed in his first argument, that his sentence was excessive.
| nLa. Const. art. I, § 20 explicitly prohibits excessive sentences. State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99) (quoting State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461). However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979 (citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4th Cir.1987)). Courts must apply these penalties unless they are found to be unconstitutional.
A sentence is constitutionally excessive if it makes no measurable contri- *1230 button to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676; State v. Bonanno, 384 So.2d 355, 357 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979 (quoting State v. Lobato, 603 So.2d 739, 751 (La. 1992)).
A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La. 1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906. As a general matter, appellate review of sentences for excessiveness in Louisiana under the authority of La. Const, art. I, § 20 is a cumulative process which “focuses on a combination of ... factors ... [including] the nature of the offense and the offender ... [and] comparison of the defendant’s punishment with the sentences imposed for similar crimes by the same court and other courts.” State v. Telsee, 425 So.2d 1251, 1253-54 (La.1983) (citations omitted).
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189.
Intertwined with this issue is the defendant’s argument that the trial court erred in failing to consider the factors outlined in La.C.Cr.P. art. 894.1. The trial judge’s failure to comply with La.C.Cr.P. article 894.1 does not automatically render a sentence invalid. The Louisiana Supreme Court has held that although Article 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself. State v. Wimberly, 414 So.2d 666, 671-72 (La.1982). Article 894.1 is intended to provide an impartial set of guidelines within which the trial judge’s sentencing discretion may be exercised. State v. Price, 403 So.2d 660, 664 (La. 1981); State v. Douglas, 389 So.2d 1263, 1266 (La.1980). Compliance with Article 894.1 further provides a record which is detailed enough to allow for a reasoned review of allegedly excessive sentences. The articulation of the factual basis for a sentence is the goal 11sof Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, the Louisiana Supreme Court has held that remand is unnecessary, even where there has not been full compliance with Article 894.1. See State v. Boatright, 406 So.2d 163 (La.1981); State v. McDonald, 404 So.2d 889 (La.1981); State v. Martin, 400 So.2d 1063 (La.1981); State v. Douglas, supra.
If the reviewing court finds adequate compliance with Article 894.1, it must then determine whether the sentence *1231 the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 03-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239. See also State v. Bonicard, 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
The defendant was convicted of attempted second degree murder. He was adjudicated a second felony offender; therefore, the possible sentence ranges from twenty-five to one hundred years. The defendant received the maximum.
In imposing the enhanced sentence, the trial court noted:
This man was in this Court with a murder charge some years ago, and he pled to a[sic] manslaughter, down from a first degree murder, and he is back on attempt [sic] murder at this point. He has not been out of the penitentiary that long.
This demonstrates that the trial court adequately considered the violent and serious nature of the offense, along with the defendant’s criminal history and risk of recidivism, in compliance with Article 894.1.
We acknowledge that maximum sentences are generally reserved for the most serious violations and the worst offenders. Landry, supra. However, a |14review of the jurisprudence establishes that Louisiana courts have affirmed one hundred' year sentences for persons convicted of attempted second degree murder and found to be second felony offenders. See State v. Hills, 98-0507 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215; State v. Hall, 606 So.2d 972 (La.App. 3 Cir.1992). In both cases, the defendants had violent criminal histories. In Hall, the presentence investigation report revealed that defendant was charged with two counts of aggravated battery and one count of attempted second degree murder, while incarcerated for the instant offense.
As in Hall, the defendant, in the instant case, has demonstrated a propensity for violence, and the sentencing judge properly tailored the punishment to fit this particular defendant and this particular crime. The defendant is clearly a danger to society, and the sentence accomplishes the legitimate purpose of protecting society from further victimization by the defendant. Although the defendant received the maximum sentence, we cannot say that the trial court abused its broad sentencing discretion. Accordingly, we do not find that defense counsel’s failure to object to or file a motion to reconsider sentence prejudiced the defendant so as to render his assistance ineffective.[3]

DECREE

The defendant’s conviction for attempted second degree murder and one hundred year enhanced sentence are affirmed.
AFFIRMED.

. State v. Laneheart, 11-0657 (La.App. 4 Cir. 7/6/11), unpub.

. Before giving his account of the events, the victim acknowledged that he had prior convictions for possession of various controlled dangerous substances, as well pending charges for unauthorized use and illegal possession of a stolen vehicle.

. The defendant also makes a cursory assertion that counsel was ineffective for failing to file a motion for new trial, as he had previously indicated in the trial court; however, we find the record inadequate to review such a claim on appeal. See Howard, supra.